UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
00 APR 13 PM 4: 10
N.D. OF ALABAMA

| | | |
|---|---|---|
| WENDI KYLE FLOWERS, | ) | |
| Plaintiff, | ) | |
| v. | ) | CV 99-BU-0806-M |
| ST. CLAIR COUNTY, ALABAMA and MARTY COLE, Sheriff of St. Clair County, | ) | ENTERED APR 13 2000 |
| Defendants. | ) | |

## Memorandum Opinion

In her remaining claims in this action, Plaintiff Wendi Kyle Flowers, a severe diabetic, asserts that Defendants Marty Cole and St. Clair County, Alabama are liable under 42 U.S.C. § 1983 for injuries she suffered as a result of allegedly being denied insulin while she was a pretrial detainee in the St. Clair County jail.[1]  Now pending before the Court is Cole's motion for summary judgment (Doc. No. 32), filed March 17, 2000. Both Flowers and Cole have filed evidence and briefs in support of their respective positions on the motion, which is now ripe for decision. Upon due consideration, the Court concludes that Cole's motion for summary judgment is due to be granted.

---

[1] The Court has previously indicated that, following the filing of the second amended complaint, it considered Flowers to have claims under 42 U.S.C. § 1983 remaining against <u>both</u> Cole, in his individual capacity, and St. Clair County. See Doc. No. 35. However, the second amended complaint states, "All claims remaining in the complaint after this amendment are asserted against Marty Cole individually." See Doc. No. 18. Accordingly, Flowers' section 1983 claim against St. Clair County will be dismissed.



## I. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II. BACKGROUND[2]

On the evening of April 9, 1998, officers of the St. Clair County Sheriff's

---

[2] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Department arrested Flowers and another woman, Laura Price, for stealing a rocking chair from the premises of a funeral home. Upon searching the automobile that Flowers and Price were driving at the time, one of the officers discovered marijuana. Flowers and Price were, therefore, also arrested for possession of a controlled substance. Flowers and Price were transported to the St. Clair County jail in Pell City, Alabama where they were booked and admitted at approximately 9:45 p.m. At that time, Flowers told the booking officer, Deputy Lance Bell, that she was a severe diabetic, that she would need a shot of insulin before she went to bed that night, and that she did not have any insulin with her. He replied that the jail had a nurse on staff and that they had taken care of diabetics before.

While being escorted to her cell at about 10 p.m., Flowers also told the corrections officer, Judy Whatley, that she was a severe or brittle diabetic and that if she did not receive a shot of insulin before going to bed and another before breakfast in the morning she would probably go into a diabetic coma. Expressing some concern, Whatley asked Flowers at what time she had last taken her insulin, and Flowers answered that she took a shot at suppertime. Flowers inquired of Whatley about the nurse she had been told about. Whatley acknowledged that while the jail did have a nurse on staff, she was off duty until the next morning.

At 11 p.m. Whatley went off duty, and she was relieved by Lisa Nichols. Soon before the end of her shift, Whatley told Nichols about Flowers's severe diabetes. Similarly, about 15 minutes after she went off duty, Whatley, following jail procedure, telephoned her superior, Captain Tom Bennett, and told him about Flowers's situation. Whatley left the jail at approximately 11:45 p.m. After Nichols came on duty, Flowers repeated to her that she was a severe diabetic and that she needed insulin that night before she went to bed. According to Flowers, she asked Nichols if she could use the telephone to call someone to bring her insulin, but that Nichols refused that request, telling her that

once her personal belongings had been checked in she could not leave the jail.³ At about 11:30 p.m., Nichols went to the nurse room to check if there was any insulin for Flowers, but she did not find any.⁴

After checking for insulin, Nichols called Captain Bennett, and he advised her to put Flowers on "medical watch" and that he would call the nurse in early the next morning if possible. Nichols advised Price, who was in the cell with Flowers, that she, Nichols, would be checking on Flowers through the night and that Price should notify her if she observed Flowers having any problems. Nichols also assured Price that if Flowers were to have a diabetic attack she would be taken to the hospital.

The jail log reflects that Nichols checked on Flowers at 12:20, 12:40, 1:15 and 2:08 a.m. Nichols did not notice any problems relating to Flowers's condition on these occasions.⁵ However, at about 5:30 a.m., Price noticed that Flowers started to get very

---

³In his brief, Cole acknowledges that Flowers testified that she asked Nichols if she could use the telephone to have someone bring her insulin and that this request was refused. Cole does point out, though, that this point is disputed, as Nichols not only denies refusing to let Flowers use the phone, but she also insists that she even offered to call someone to bring Flowers's medication to the jail, but that Flowers declined. Nichols Depo. at 21-22. Cole also recognizes, however, correctly, that a jury could reasonably credit Flowers's version of events on this point.

⁴Nichols stated in her deposition that she found two bottles of insulin in the nurse room that evening and that she offered them to Flowers but that Flowers refused them, saying they were the wrong kind for her to use. Nichols Depo. at 24, 50. However, Nichols wrote on the jail log that when she checked the nurse room for insulin, it "did not have any." Plaintiff's Ex. 10 at 1. In addition, Flowers stated that she was never offered any type of insulin while at the jail. Flowers Depo. at 187-88. The Court agrees with Flowers that a jury could credit the log and Flowers's testimony and reasonably find that Nichols did not locate or offer any insulin to Flowers.

⁵Nichols did have some medical training and experience. She completed an emergency medical technician ("EMT") training course from Gadsden State Community College in Gadsden, Alabama, and she was a certified nursing assistant student at a nursing home, although she did not complete that training. Nichols Depo. at 30. She also stated that her EMT course included training on recognizing the symptoms of diabetic ketoacidosis, the condition that ultimately afflicted Flowers. Id. at 42. Nichols also stated that she worked on an ambulance and

short of breath, weak, and dizzy. Price notified the corrections officers, and at about 5:40, Flowers was removed from her cell and transported to the St. Clair Regional Hospital. Presenting at the emergency room, Flowers had very high blood sugar and was diagnosed with diabetic ketoacidosis ("DKA"), a state where keytones have entered the patient's blood stream causing the blood to become acidic. She was admitted to the intensive care unit, where she received intravenous fluids, continuous insulin and correction of electrolytes. She was also given "bicarb infusion," magnesium, potassium, and phosphorous. After approximately five hours, she was out of acidosis and her condition improved. The following day, April 11, 1998, Flowers was discharged from the hospital into the custody of the St. Clair County Sheriff's Department.

Subsequently, Flowers filed this action, naming as defendants St. Clair County (hereinafter the "County") and Cole in his official capacity as the sheriff of the County.[6] Flowers alleged that they were liable under 42 U.S.C. § 1983 ("section 1983") for depriving her of her constitutional rights and under Alabama state law for negligence. Thereafter, Flowers filed a second amended complaint, whereby she charged that Cole was now being sued in his individual capacity, dismissed her claims brought against Cole in his official capacity, and dismissed any state law negligence claims against the County. See Doc. No. 18. This Court dismissed Flowers's state law negligence claim against Cole on sovereign immunity grounds, leaving only the section 1983 claims against Cole in his individual capacity and against the County.[7] See Doc. No. 35. On March 17, 2000, Cole

---

"some" in an emergency room and that she had seen someone in ketoacidosis before. Id. at 45-46.

[6]Although Cole held the office of sheriff during the events forming the basis of the instant lawsuit, he left office in 1998.

[7]As noted previously, Flowers's section 1983 claim against St. Clair County will be dismissed, see Note 1, supra, leaving Flowers's section 1983 claim against Cole in his individual capacity as the sole remaining claim in this action.

filed the instant motion for summary judgment.

### III. DISCUSSION

To prevail on her section 1983 claim against Cole, Flowers must demonstrate both (1) that he deprived her of a right secured under the Constitution and (2) that the deprivation occurred under color of state law. See Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998). There is no dispute in this case that all the relevant conduct in this case occurred under color of state law. On the issue of whether a constitutional violation can be shown, it is well established that a jail official violates a pre-trial detainee's Fourteenth Amendment right to due process if he acts with "deliberate indifference" to the "serious" medical needs of the detainee. Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997) (citing Thomas v. Town of Davie, 847 F.2d 771, 772 (11th Cir. 1988); Estelle v. Gamble, 429 U.S. 97 (1976)).[8] A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1186-87 (11th Cir. 1994). An official acts with "deliberate indifference" if he is subjectively aware of a substantial risk of serious harm to a prisoner and disregards that risk by failing to take reasonable measures to abate the risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994). Thus, a jail official who is aware of but ignores the dangers of a serious medical condition and waits for a manifest emergency before obtaining medical care is deliberately indifferent to an inmate's constitutional rights. Lancaster, 116 F.3d at 1426.

Flowers emphasizes that it is not disputed that several jail officials had actual

---

[8] As the Eleventh Circuit explained in Lancaster, the Due Process Clause of the Fourteenth Amendment governs official treatment of pre-trial detainees, while the Eighth Amendment's prohibition against cruel and unusual punishment governs treatment of convicted prisoners. 116 F.3d at 1419 n.6. However, the constitutional standard for providing medical care to pretrial detainees and convicted prisoners is the same under the Fourteenth and Eighth Amendments. Id.

knowledge that she had severe diabetes and that if she was not given insulin that night she would likely experience a very serious adverse reaction. She also argues that her testimony, although disputed, further indicates that jail officials nonetheless failed to provide or offer her any insulin, failed to have her condition evaluated by any qualified medical personnel, refused her requests to call someone to bring her insulin, and merely watched her in hopes that she would not have a diabetic attack that night, and then took her to the hospital after she did. Flowers claims that such evidence is sufficient to establish deliberate indifference on the part of jail officials to her serious medical needs, a constitutional violation. For summary judgment purposes, the Court will assume that the evidence, viewed in the light most favorable to Flowers, reasonably indicates that one or more officials at the jail acted with deliberate indifference to her serious medical needs, and thus committed a due process violation. See, e.g., Lancaster, 116 F.3d at 1425-26 (holding that jail officials who were aware of but ignored the danger of acute alcohol withdrawal and waited for a manifest emergency before obtaining medical care were deliberately indifferent to a pretrial detainee's constitutional rights); Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998) (noting that the allegations of the plaintiff there, that he had epilepsy, that he told jail officials that he needed to take medication on a daily basis to avoid having seizures, that jail officials ignored his requests, and that he suffered a grand mal seizure as a result, stated "the prototypical case of deliberate indifference").

    Cole argues, though, that even if Flowers' constitutional rights were violated by some jail official or officials, he cannot be held liable under section 1983. Cole does not dispute that under Alabama law, as the sheriff of St. Clair County, he had a duty to obtain medical attention for prisoners such as Flowers. See § 14-6-19, Ala. Code 1975; Lancaster, 116 F.3d at 1431. But Cole correctly points out that he cannot be found liable under section 1983 merely because he was the supervisor of other jail officials who violated Flowers's constitutional rights. See Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995).

He also asserts, and Flowers has not been able to dispute, that he had no contact with Flowers, nor any knowledge of her diabetic condition, nor any involvement in any decision pertaining to her medical treatment, or lack thereof. Therefore, he argues, the unavailability of respondeat superior liability, coupled with the lack of personal involvement on his part in deciding how to treat Flowers's condition, preclude a finding of liability against him.

However, a section 1983 plaintiff need not necessarily prove that a supervisory official was personally involved in acts causing a constitutional deprivation; she might alternately show a causal connection between some act of the supervisor and the alleged constitutional violation committed by his subordinate. Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. April 3, 1981).[9] Thus, Flowers might prove that Cole is independently liable under section 1983 by showing that he established or utilized a policy or custom that was followed by his subordinates and resulted in the deliberate indifference to Flowers's serious medical needs, Ancata v. Prison Health Services, Inc., 769 F.2d 700, 706 (11th Cir. 1985), or by showing that, with deliberate indifference to the constitutional right of inmates to receive adequate care for serious medical needs, Cole failed to adequately train or supervise his subordinates, and that such failure caused the constitutional infringement by a subordinate. See Adams, 61 F.3d at 1544-45; Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990). See also City of Canton, Oh. v. Harris, 489 U.S. 378, 389-90 (1989).

Flowers concedes that there is no evidence that Cole established an affirmative policy or custom that directed jail officials to deny inmates required medication. Indeed, she is unable to contest that the policy or custom of the jail was, at least on a general level, to provide inmates with required medication. There is no question that, per the

---

[9] All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

procedure instituted by Cole, Flowers was asked upon commitment to the jail about her medical requirements and whether she was taking any prescription medication. Cole also established a medical watch and hired a licensed nurse who worked at the jail on weekday mornings and who generally oversaw the dispensation of medication to prisoners while she was on duty. In fact, the evidence is not disputed that the jail regularly kept and administered medication for inmates and often even had insulin on hand, which Nichols attempted to locate in hopes that it could be given to Flowers. In addition, it is undisputed that when the staff nurse was off duty jail officials were authorized to telephone her or a hospital supervisor, who was usually a registered nurse on duty, for assistance on medical problems. Finally, there is evidence indicating that when an inmate required prescription medication, the jail procedure was to see if the inmate had the medication with them, in which case the nurse or the hospital would be consulted to verify that it could be taken and, if the inmate did not have the medication with them, a jail official would obtain and call the telephone number of a friend or family member to have the medication brought to the jail.[10]

Flowers argues, though, that Cole, in deliberate indifference to inmates' constitutional rights, failed to adequately train or supervise his subordinates and that such failure caused jail officials to unlawfully deprive her of adequate medical care. More specifically, Flowers alleges that Cole did not institute jail policies or training specifically guiding his subordinates in obtaining and administering required medication for inmates in situations where the nurse was not on duty, the inmate could not or would not provide it herself, and the jail did not have the required medication on hand. She also urges that

---

[10]Of course, if this was in fact the policy but jail officials failed to follow it, there is no basis to hold the policymaker, in this case Cole, liable under section 1983 in the absence of evidence that officers had previously misused the device or failed to follow City policy See Owens v. City of Atlanta, 780 F.2d 1564, 1568 (11th Cir. 1986)

Cole had not properly trained his subordinates regarding when they should call the nurse when she was not on duty and that he had no procedures or training on dealing with diabetics specifically. The Court concludes, however, that even assuming the evidence is sufficient to indicate that Cole is guilty of omissions in policymaking, training and supervising, as Flowers alleges, he is still entitled to summary judgment.

As previously indicated, Flowers' claim, that Cole failed to properly train and supervise employees to ensure that inmates received required medication in instances where the nurse was off duty and the jail lacked the medication, is cognizable only if those omissions reflect "deliberate indifference" on the part of Cole to the constitutional right of inmates to receive adequate medical care. See Young. v. City of Augusta, Ga., 59 F.3d 1160, 1171 (11th Cir. 1995); Adams, 61 F.3d at 1544-45; Greason, 891 F.2d at 836-37; City of Canton, 489 U.S. at 389-90. Such "deliberate indifference," in the context of a claim that a policymaker is liable under section 1983, means that the policymaker had "actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights," Young, 59 F.3d at 1172 (quoting City of Canton, 489 U.S. at 396 (O'Connor, J., concurring in part and dissenting in part), and yet "made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). This "deliberate indifference" may be demonstrated in one of two ways.

Most often, the need for more or better training or supervision is shown by the existence of a pattern of constitutional violations or prior abuse such that the municipality knows or should know that corrective measures are needed. See, e.g., Young, 59 F.3d at 1172-73; Anderson v. City of Atlanta, 778 F.2d 678, 686 (11th Cir. 1985). However, such is not the case here. There is no evidence indicating that there has been a similar incident in the St. Clair County jail where an inmate was erroneously deprived of needed medical care. Cases from this circuit show that, generally, where no similar incidents are indicated to have occurred, the evidence is considered insufficient to establish that the policymaker

acted with deliberate indifference. See, e.g., Gold, 151 F.3d at 1351; Adams, 61 F.3d at 1545; Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994); Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990); Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990). But see Vineyard v. County of Murray, Ga., 990 F.2d 1207 (11th Cir. 1993).

There may also be limited circumstances where deliberate indifference might be shown even without evidence of prior incidents.  In City of Canton, the Supreme Court recognized in dictum that "it may happen that in light of the duties assigned to specific officers or employees" the need to train or supervise in a particular area may be so obvious and the likelihood of constitutional violations so highly predictable so that liability attaches for a single incident. 489 U.S. at 390; see also Gold, 151 F.3d at 1351-52. As an example, the Supreme Court offered that it would be obvious that police officers would have to be trained on the constitutional limitations on the use of deadly force, when a city provides the officers with firearms and it knows "to a moral certainty" that its officers will be required to arrest fleeing felons.  Id. at 390 n.10.  Subsequently, however, in Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. 397, 409 (1997), the Court cautioned that this example as "simply hypothesiz[ing] that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."

Flowers argues that Cole was deliberately indifferent in that it should have been "obvious" to "a reasonable person occupying the sheriff's office" that additional policies, training, and supervision were needed because, she asserts, "a constitutional violation is likely to occur sooner or later" if subordinates are not specifically instructed to deliver required medication to an inmate or to deliver the inmate to a place where the medicine can be administered.  Plaintiff's Brief at 10.  However, Flowers cannot dispute that Cole took a number of significant steps designed to meet the medical needs of inmates,

including steps regarding medication. Nor has Flowers been able to counter evidence indicating that jail officials did receive some training, and at least minimal instruction on how to respond to medical needs. See Whatley Depo. at 10, 37; Nichols Depo. at 8, 10,11, 39, 42. The Court concludes that, even assuming Cole failed to have policies or training specifically directing his subordinates to secure and administer medication in circumstances similar to this case, given the general protections that clearly were in place for the medical needs of inmates, it cannot be said that it was so patently obvious that his omissions would necessarily result in constitutional injury. See City of Canton, 489 U.S. at 392 (noting that the evidence, as presented, contained insufficient indicia of deliberate indifference on the part of the defendant city in allegedly failing adequately to train its police officers to recognize when to summon medical care for an injured pretrial detainee, where there was no evidence of similar incidents and the record indicated that the city trained its officers on first-aid instruction); Young, 59 F.3d at 1171-72 (finding no obvious need to train jail employees "to recognize the need to remove a mentally ill inmate to a hospital or to dispense medication as prescribed"). Accordingly, the Court concludes that Cole's motion for summary judgment is due to be granted on this ground.[11]

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Cole's motion for summary

---

[11]The Court also notes that Cole argues that he is entitled to qualified immunity. The Court agrees that the evidence in this case is sufficient to grant Cole's motion for summary judgment on this ground as well. Flowers makes a convincing argument that qualified immunity would not protect the jailers who were personally involved in the allegedly unconstitutional denial of medical care, but she fails to show that qualified immunity does not protect Cole with regard to his alleged failure to promulgate additional policies or institute additional training. See Belcher v. City of Foley, Ala., 30 F.3d 1390, 1397-98 (11th Cir. 1994) (finding that it was not clearly established that defendant police chief's failure to develop procedures to guide subordinates in identifying inmates' suicidal tendencies was unconstitutional). In any case, given its conclusion that Cole did not personally violate Flowers's constitutional rights and cannot be held liable for any violation that might have been committed by his subordinates, the Court deems it unnecessary to further discuss this argument.

judgment (Doc. No. 32), is due to be GRANTED. Further, pursuant to the stipulation in Flower's second amended complaint that the only claims remaining in this action were asserted against Cole in his individual capacity, her section 1983 against St. Clair County is due to be DISMISSED. There being no claims remaining, the pre-trial conference scheduled for Friday, April 14, 2000 is CANCELED.

DONE and ORDERED this 13th day of April, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE